1
2
3
4
5
6            IN THE UNITED STATES DISTRICT COURT
7               FOR THE DISTRICT OF ARIZONA
8
9   Douglas Borchers,                    )   No. CV 11-1018-PHX-DGC (LOA)
                                         )
10             Petitioner,               )   **REPORT AND RECOMMENDATION**
                                         )
11  vs.                                  )
                                         )
12  Duane Belcher, Sr., et al.,          )
                                         )
13             Respondents.              )
                                         )
14  _____   )

15          Petitioner, who is confined in the Arizona State Prison Complex-Eyeman, in Florence,

16  Arizona, has filed, through counsel, a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C.

17  § 2254. Petitioner was convicted in Coconino County Superior Court, case number CR74-

18  006459, of raping a thirteen year old and lewd and lascivious behavior and sentenced to twenty

19  years to life in prison. (Doc. 7 at 3)  Petitioner raises one ground for relief. He asserts that he

20  was granted parole by the Arizona Board of Executive Clemency ("the Board") upon certain

21  conditions after it concluded Petitioner would live and remain at liberty without violating the

22  law, if released. The Board allegedly rescinded that decision in violation of due process and its

23  own procedures.  For the reasons set forth below, the Petition should be granted.

24  **I.  Factual and Procedural Background**

25          In July of 1974, Petitioner was convicted of rape and lewd and lascivious conduct

26  and sentenced to twenty years to life imprisonment. (Doc. 1 at 4)  On February 10, 2006, the

27  Board granted Petitioner parole under four conditions: "Needs assessment/referral

28  (Counseling, Vocational, Educational), "No use of alcohol," "Take part in available

[programs]," and "Parole to Arkansas only."  (Doc. 1, Exh. A)  Petitioner's parents lived in Arkansas at that time and Arkansas had agreed to accept Petitioner for supervision under the Interstate Compact. (Doc. 1 at 4, Doc. 7 at 3)

Before he was released on parole, pursuant to a stipulation of the State of Arizona and Petitioner, the Coconino County Superior Court entered an order committing Petitioner to the Arizona Community Protection and Treatment Center ("ACPTC") program for sexually violent offenders at the Arizona State Hospital ("ASH") pursuant to A.R.S. § 36-3710. (Doc. 7 at 3)  Petitioner entered the program on December 1, 2006. (Doc. 1 at 5-6)  During the next two years, Petitioner successfully participated in the ACPTC program which included securing employment and leaving the facility to work.  (Doc. 1 at 6; Exhs. B, C)  On May 14, 2008, the Board modified the terms of Petitioner's grant of parole pursuant to an "Addendum to Proclamation of Community Parole Issued February 10, 2006" (the "Addendum"). (Doc. 1, Exh. A)  Significantly, the Board temporarily suspended the "Arkansas only" condition of parole to enable Petitioner to live in the community as the final stage of ACPTC program. (Respondents' Exh. B)  The Addendum required Petitioner to notify the Board and the Arizona Department of Corrections ("ADOC") when he received notice that he was to be discharged from civil commitment. At such time, Petitioner could request modification of the "Arkansas only" term of release to be made permanent. (*Id*.)

Petitioner lived and worked in the Phoenix area during part of 2008 under supervision of the ACPTC. (Doc. 1 at 6)  In late November, 2008, ACPTC recommended that Petitioner be released from the order of civil commitment. (Doc. 1 at 7)  Petitioner notified his parole officer and the Board. Petitioner completed the ACPTC program in late December 2008. On January 5, 2009, Petitioner was notified at 4:00 p.m. that the court had dismissed the civil commitment. At 7:00 p.m. that same day, Petitioner was picked up by ADOC and returned to custody at the Alhambra facility, the secure prison facility attached to the Arizona State Hospital, where the ACPTC program is conducted. He was returned to ADOC custody because his parole conditions no longer permitted him to live in Arizona and the prior approval by Arkansas had lapsed. (Doc. 1 at 7)

On January 6, 2009, Petitioner received a telephone call from Respondent Belcher, telling him the Board would conduct a hearing on January 15, 2009 to determine his status. During that hearing, Chairman Belcher stated, "I just want to point out for the record to all individuals here that although Mr. Borchers was in the custody of the Department of Corrections, it was not for any wrongdoing. This is not a revocation hearing."  (Doc. 1, Exh. E at 5-6)  The Board declined to permanently modify the "Arkansas only" condition of Petitioner's parole. (*Id*. at 35-36) Thus, Petitioner remained in custody. (Respondents' Exh. C)

The State of Arkansas reconsidered whether to accept Petitioner. Petitioner was notified on April 9, 2009, that Arkansas had denied his request under the Interstate Compact due to a lack of records from ASH. The Arizona Interstate Compact[1] officials resubmitted the request along with the hospital records. Arkansas investigated the home of Petitioner's parents. The officials told Petitioner's parents that he would have to remain at their home for a minimum of six months under their supervision, could not use an answering machine, computer, or the internet. Petitioner's parents did not agree to that arrangement and Petitioner's release to Arkansas was not approved. (Doc. 1 at 9; Doc. 7 at 4)

Petitioner was transferred to the Arizona State Prison Complex - Eyman,[2] in

---

[1] The Interstate Compact for the Supervision of Adult Offenders is an agreement between two or more states for the transfer of supervision of adult offenders per A.R.S.§ 31-467 *et seq*. *Warner v. McVey*, 2010 WL 3239385, * 4 (W.D.Pa. July 9, 2010) ("The Interstate Compact provides offenders the opportunity to transfer their probation or parole supervision to the community where they have family, confirmed employment, specialized treatment programs, and/or educational or vocational opportunities. ") Arizona has different compacts for juvenile offenders, and adult offenders supervised in states neighboring Arizona and other states. *See Stewart v. McManus*, 924 F.2d 138 (8th Cir. 1991); *Arizona Dep't of Economic Sec. v. Leonardo*, 200 Ariz. 74, 22 P.3d 513 (Az.Ct.App. 2001); *Salstrom v. State*, 148 Ariz. 382, 714 P.2d 875 (Az.Ct.App. 1986).

[2] According  to Arizona Court of Appeals, upon Petitioner's reincarceration, ADOC "placed him in maximum security detention and designated him as a 'parole violator.'" (Doc. 7-1 at 21 n. 1)

Florence, Arizona where he remains. On July 7, 2009, the Board again considered Petitioner's status. (Respondents' Exh. D; doc. 1, Exh. D)  Petitioner, who was represented by counsel, participated telephonically. Witnesses presented information in favor and in opposition of modifying the "Arkansas only" condition of Petitioner's parole. The Board again denied Petitioner's request to modify the condition of parole to "Arkansas only."  (*Id.*)

On September 24, 2009, Petitioner, through counsel, filed a Petition for Writ of Habeas Corpus in the Maricopa County Superior Court. The court construed it as a petition for special action and accepted it as Cause No. LC2009-000696-001 DT. On February 12, 2010, the court[3] conducted a hearing on the special action. The court ordered the Board to "conduct either a rescission or revocation hearing within ninety (90) days of [February 12, 2010]." (Respondents' Exh. E) The court further ordered that, if the Board did not conduct such a hearing, the original terms of Petitioner's February 10, 2006 parole remained in effect. (*Id.*)  The Board declined to conduct a rescission or revocation hearing and allowed the "Arkansas only" condition to remain in effect.  (Respondents' Exh. F)

Petitioner filed a Motion for Further Relief with the Superior Court, asking the court to order his release from custody. On May 19, 2010, the court denied Petitioner's motion. (Respondents' Exh. G)

On June 9, 2010, Petitioner filed a notice of appeal. On January 6, 2011, the Arizona Court of Appeals found that the Board had afforded Petitioner "the due process rights to which he may have been entitled" and affirmed the lower court's orders denying relief.  (Respondents' Exh. H)  Petitioner filed a petition for Habeas Corpus and a Petition for Review with the Arizona Supreme Court. On April 19, 2011, the Arizona Supreme Court denied review.  (Respondents' Exh. I)

Thereafter, Petitioner filed a Petition for Writ of Habeas Corpus in this Court. Petitioner argues that his return to ADOC custody violated his right to due process as provided in *Morrissey v. Brewer*, 408 U.S. 471, 486-88 (1972). Petitioner presented this

---

[3] The Honorable Joseph Kreamer presided.

1   claim to the Arizona courts. The Superior Court ruled that, if the Board chose not to conduct

2   a rescission or revocation hearing, the original terms of parole remained in effect.  (Respon-

3   dents' Exh. E)  The Arizona Court of Appeals found that the Board provided the process to

4   which Petitioner was due under *Morrissey*.  (Respondents' Exh. H)  The Arizona Supreme

5   Court affirmed summarily the Arizona Court of Appeals' decision, thus the Arizona Court of

6   Appeals' decision is the last reasoned decision of the State courts which is subject to habeas

7   corpus review.

8   **II.  Habeas Corpus Relief - Cognizable Claims**

9          Title 28 U.S.C. § 2254(a) sets forth the scope of federal habeas corpus review:

10         The Supreme Court, a Justice thereof, a circuit judge, or a district court shall
           entertain an application for a writ of habeas corpus in behalf of a person in custody
11         pursuant to the judgment of a State court only on the ground that he is in custody
           in *violation of the Constitution or laws or treaties of the United States*.
12

13  28 U.S.C. § 2254(a) (emphasis added). The Supreme Court has repeatedly stated that the habeas

14  statute "unambiguously provides that a federal court may issue a writ of habeas corpus to a state

15  prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or

16  treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. ___, 131 S.Ct. 13, 15 (2010) (*per

17  curiam*) (quoting 28 U.S.C. § 2254(a)). Accordingly, "[a] habeas petition must allege the

18  petitioner's detention violates the constitution, a federal statute or a treaty." *Franzen v.

19  Brinkman*, 877 F.2d 26 (9th Cir. 1989).  "[F]ederal habeas corpus does not lie for errors of state

20  law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780

21  (1990)); *see also Gilmore v. Taylor*, 508 U.S. 333, 349 (1993) (stating that "mere error of state

22  law, one that does not rise to the level of a constitutional violation, may not be corrected on

23  federal habeas."). The purpose of habeas proceedings under § 2254 is to ensure that state

24  convictions satisfy federal constitutional requirements applicable to states. *Burkey v. Deeds*,

25  824 F.Supp. 190, 192 (D.Nev. 1993). A habeas petitioner cannot "transform a state law issue

26  into a federal one by merely asserting a violation of due process." *Poland v. Stewart*, 169 F.3d

27  573, 584 (9th Cir. 1999) (quoting *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996)).

28         To the extent that Petitioner challenges the Arizona parole procedure, his claim

involves the interpretation and application of Arizona law. The United States Supreme Court has held that a parole-eligibility claim is not cognizable on federal habeas corpus review. *Swarthout v. Cooke*, __ U.S.__, 131 S.Ct. 859, 861 (2011) (holding that the application of constitutionally adequate parole procedures are issues of state law and not subject to federal habeas corpus review); s*ee also Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) (finding that petitioner's claim that the state court erred in imposing consecutive sentences was not cognizable in federal habeas); *Hendricks v. Zenon*, 993 F.2d 664, 674 (9th Cir. 1993) (holding that "claim regarding merger of convictions for sentencing is exclusively concerned with state law and therefore not cognizable in a federal habeas corpus proceeding.").

In addition to challenging the parole procedure, Petitioner brings a federal Due Process challenge which is subject to federal habeas corpus review.

## III.  Standard of Review

This Court's review of Petitioner's claims is constrained by the applicable standard of review set forth in 28 U.S.C. § 2254(d), as amended in 1996 by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). The ADEPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). The standard in § 2254(d) is "meant to be" "difficult to meet." *Harrington v. Richter*, ___ U.S., ___ , 131 S.Ct. 770, 786 (2011).  Section "2254 stops short of imposing a complete bar on federal court relitigation of claims already rejected in state court proceedings." *Id*. (citations omitted). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunction in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979)).

If an habeas corpus petition includes a claim that has been "adjudicated on the merits in State court proceedings," federal habeas relief is not available unless it is shown that the state court's decision "was contrary to" federal law then clearly established in the holdings of the United States Supreme Court, § 2254(d)(1); *Green v. Fisher*, __ U.S.__, 2011 WL 5335411, at

* 3 (Nov. 8, 2011); *Williams v. Taylor*, 529 U.S. 362, 412 (2000) (or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2)); *Richter*, 131 S.Ct. at 785; *see also Mancebo v. Adams*, 435 F.3d 977, 978 (9th Cir. 2006). This is a "difficult to meet," *Richter*, 562 U.S. ___, 131 S.Ct. at 786, and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*) (citation and internal quotation marks omitted). The petitioner bears the burden of proof. *Id*. at 25.

To determine whether a state court ruling was "contrary to" or involved an "unreasonable application" of federal law, courts look exclusively to the holdings of the Supreme Court which existed at the time of the state court's decision. *Green*, 2011 WL at * 3; *Richter*, 131 S.Ct. at 786 (citing *Renico v. Lett*, 559 U.S. ___ , ___, 130 S.Ct. 1855, 1866 (2010)). Even if the state court neither explains its ruling nor cites United States Supreme Court authority, the reviewing federal court must nevertheless examine Supreme Court precedent to determine whether the state court reasonably applied federal law. *Richter*, 131 S.Ct. at 784 (citing *Early v. Packer*, 537 U.S. 3, 8 (2003)).

Under § 2254(d), a state court's decision is "contrary to" federal law if it applies a rule of law "that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Mitchell v. Esparza*, 540 U.S 12, 14 (2003) (citations omitted); *Williams*, 529 U.S. at 411. A state court decision is an "unreasonable application of" federal law if the court identifies the correct legal rule, but unreasonably applies that rule to the facts of a particular case. *Id.* at 405; *Brown v. Payton*, 544 U.S. 133, 141 (2005). An incorrect application of federal law does not satisfy this standard. *Yarborough v. Alvarado*, 541 U.S. 652, 665-66 (2004) (stating that "[r]elief is available under § 2254(d)(1) only if the state court's decision is objectively unreasonable."). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree on the correctness of the state court's decision.'" *Richter*,

131 S.Ct. at 786 (citing *Yarborough*, 541 U.S. at 664). "'[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determination.'" *Id.*

## IV.   Analysis

Petitioner claims that he was denied due process when he was returned to ADOC custody without written notice or a proper hearing.  Petitioner contends that he was entitled to the due process protections articulated in *Morrissey*, 408 U.S. at 480, because his status was tantamount to a parolee based on his release pursuant to A.R.S. § 36-3714  to participate in the ACPTC, and the temporary suspension of the "Arkansas only" condition of parole.

Although "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979), an individual already enjoying certain forms of conditional release has a protected liberty interest in retaining them. In *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972), the Supreme Court held that the Due Process Clause creates a liberty interest in parole. The Court explained that a parolee's liberty is unlike the minimal liberties of those who reside behind prison walls.  It is the freedom to "be gainfully employed," "to be with family and friends," and "to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. The Court recognized that, "the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Id*., 408 U.S. at 480. However, a parolee's liberty involves significant values within the protection of the Due Process Clause of the Fourteenth Amendment, and termination of that liberty requires an informal hearing to give assurance that the finding of a parole violation is based on verified facts to support the revocation. *Id*., 408 U.S. at 481-82.

Similarly, in *Young v. Harper*, 520 U.S. 143 (1997), the Supreme Court determined that the petitioner had a liberty interest in his participation in a "pre-parole" program. Analogizing the program to traditional parole that received due process protection in *Morrissey*, the Court noted that "[the petitioner] kept his own residence; he sought, obtained, and

- 8 -

1    maintained a job; and he lived a life generally free of the incidents of imprisonment." *Id.* at 148.

2    To determine how the Due Process Clause should apply to the liberty interests of prisoners

3    serving sentences in an alternative form of confinement, courts "compar[e] the specific

4    conditional release in the case before them with the liberty interest in parole as characterized

5    by *Morrissey*." *Holcomb v. Lykens,* 337 F.3d 217, 221 (2d Cir. 2003). Thus, this Court will

6    consider Petitioner's specific situation "along a spectrum of liberty that extends from the

7    'ordinary incidents of prison life' at its lowest end to parole at its highest." *Gonzalez-Fuentes*

8    *v. Molina*, 607 F.3d 864, 877 (1st Cir. 2010) (finding petitioners' release on electronic

9    supervision program similar to that of the parolee in *Morrissey* where participants lived in their

10   own homes on work release, attended church in the local community, and had the freedom to

11   be with family and friends.)

12          Respondents argue that, unlike the situation in *Morrissey*, Petitioner's parole was not

13   revoked.  Rather, the original grant of parole remains in effect and Petitioner has failed to satisfy

14   the condition that his parole is "to Arkansas only." Respondents' argument disregards the

15   specific facts of this case. At the time Petitioner was returned to ADOC custody, he had

16   completed the six levels of the Arizona Community Protection and Treatment Center program

17   ("ACPTC").  The ACPTC is a unit of the Arizona State Hospital and is operated by the Arizona

18   Department of Health Services ("ADHS"), not the ADOC. *See State ex rel. Ariz. Dep't of Health*

19   *Servs. v. Gottsfield*, 213 Ariz. 583, 146 P.3d 574, 576 (Az.Ct.App. 2006); A.R.S. § 36-

20   3707(B)(1); *Bloom v. McCarville*, 2008 WL 466169, at * 2 n.2 (Az.Ct.App. Feb. 7, 2008)

21   (noting that "when §36-3707(B)(1), (then § 13-4606(B)), was amended in 1996, the legislature

22   substituted ADHS for ADOC and deleted 'operated by the state department of corrections . . .

23   .'").

24          Petitioner entered the ACPTC program in December 2006.  He successfully

25   participated in the program during the next two years and was permitted to leave the facility at

26   the ASH to work. (Doc. 1, Exhs. B, C) In 2008, Petitioner reached level six of the ACPTC

27   program. This level involved release to live in the community. Petitioner had a job in the

28   community and lived and owned a home from August 2008 to early 2009. (Doc. 1 at 6)

Petitioner wore a GPS device that was monitored by ADHS.  (*Id*. at 7)  On May 14, 2008, the Board modified the terms of Petitioner's parole to temporarily suspend the "Arkansas only" condition provided he was participating in the treatment program.  (Respondents' Exh. B)  The conditions of Petitioner's parole issued on February 10, 2006 were modified by an Addendum to reflect the following:

> 1.  The phrase "conditioned upon compliance with those regulations specified by the ADOC for conduct while on parole" is temporarily amended to "conditioned upon compliance with all terms and conditions ordered by the Court in connections with [Petitioner's] civil commitment pursuant to A.R.S. § 36-3707 in Coconino County Superior Court Case No. CV06-0590, . . . as well as any specific terms and conditions imposed on [Petitioner] by the Superintendent of the Arizona State Hospital pursuant to A.R.S. § 36-3710 . . . .
> * * *
>
> 4.  The Board condition "Parole to Arkansas" only is temporarily suspended until such time as [Petitioner] is discharged from his civil commitment in Coconino County Superior Court Case No. CV06-0590 pursuant to A.R.S. § 36-3714.  Upon receiving notice that he is to be discharged, [Petitioner] shall immediately notify the Board and the Arizona Department of Corrections.  At that time, [Petitioner] may ask the Board to consider permanent modification of the "Parole to Arkansas only" condition of his grant of parole."

(Respondents' Exh. B)

Arizona courts have recognized that commitment for treatment under Arizona's Sexually Violent Persons Act (the "SVP Act"), A.R.S. § 36-3701 through 36-3717, does not constitute imprisonment and that "neither ACPTC nor ASH falls within the definition of a prison." *Bloom*, 2008 WL 4661699, at * 2-3.  Petitioner analogizes his release to participate in the ACPTC program, combined with the temporary suspension of "Arkansas only" condition of parole, to release on parole.  *See Young*, 520 U.S. at 148-49 (1997) (holding that Oklahoma's pre-parole release program was sufficiently like parole as to create a protected liberty interest warranting the same pre-termination due process procedures afforded to parolees).

In this case, the Arizona Court of Appeals cited *Morrissey* but did not specifically address whether Petitioner's status was the equivalent of parole for due process purposes. Rather, the appellate court assumed - without deciding - that Petitioner was entitled to the same due process procedures afforded parolees and found that he was accorded the process to which he was due.

- 10 -

1    The Court finds that Petitioner's case is similar to *Young v. Harper*, 520 U.S.143

2  (1997), where the Supreme Court held that Oklahoma's pre-parole program, as it existed at the

3  time Harper was released, was a type of parole and, therefore, Harper was entitled to due process

4  before his participation in the program was terminated. The Court considered the pre-parole

5  program similar to parole because Harper was released from prison before the expiration of his

6  sentence, "kept his own residence; sought, obtained, and maintained a job; and lived a life

7  generally free of the incidents of imprisonment." *Young*, 520 U.S. at 148. Although the

8  modification of Petitioner's parole specified that he remained subject to monitoring by the

9  ADOC,[4] and Petitioner wore a GPS device, there is no evidence that Petitioner had to report to

10  ADOC or had other direct contact with an ADOC facility.  Additionally, monitoring by a GPS

11  device, "unlike institutional confinement of any kind, allowed [Petitioner] to . . . form

12  relationships with neighbors, lay down roots in [his] community, and reside in a dwelling of [his]

13  own choosing . . . ." *Gonzalez-Fuentes*, 607 F.3d at 891.  Additionally, the Addendum provided

14  that the parole to "Arkansas only" condition was suspended "until such time as [Petitioner] is

15  discharged from his civil commitment in Coconino County Superior Court Case No. CV06-0590

16  pursuant to A.R.S. § 36-3714." (Respondents' Exh. B)  The Addendum also provided that,

17  "upon receiving notice that he is to be discharged, [Petitioner] shall immediately notify the

18  Board and the Arizona Department of Corrections. At that time, [Petitioner] may ask the Board

19  to consider permanent modification of the "Parole to Arkansas only" condition of his grant of

20  parole." (*Id*.)  Although the Addendum provided that the "Arkansas only" condition was only

21  temporarily suspended, nothing in the Addendum indicates that upon his discharge from the

22  ACPTC program, Petitioner would immediately be returned to ADOC custody. Rather, the

23  Addendum is silent regarding what would happen after Petitioner notified the Board and the

24

25    ───────────────

26    [4]  The Modification of Parole Conditions for Petitioner specified that he would be "subject to monitoring, surveillance and supervision by the Arizona Department of Corrections,

27  including reporting requirements imposed by the Arizona Department of Corrections in consultation with the Arizona Community Protection and Treatment Center." (Respondents'

28  Exh. B)

1    ADOC that he had received "notice that he is to be discharged" from civil commitment pursuant

2    to A.R.S. § 36-3714. (Respondents' Exh. B; doc. 1, Exh. A) The Addendum does provide,

3    however, that Petitioner could seek permanent modification of the "Arkansas only" condition

4    of parole. (*Id.*)

5            Although the Court agrees with Respondents that Petitioner's parole was not

6    technically revoked, Petitioner's release pursuant to the ACPTC program, the temporary

7    suspension of the "Arkansas only" parole condition, and Petitioner's significant freedom within

8    the Phoenix community indicates that Petitioner was entitled to liberty that cannot be taken away

9    without due process. *See Young*, 520 U.S. at 566 (holding that the requirements of *Morrissey*

10   applied to the return of a prisoner to custody after release on a pre-parole program); *Kim v.*

11   *Hurston*, 182 F.3d 113, 118 (2nd Cir. 1999) (holding that the ability to live in one's home while

12   working a job rendered a work-release program "virtually indistinguishable from either

13   traditional parole or the Oklahoma program considered in *Young*."); *Paige v. Hudson*, 341 F.3d

14   642, 643-44 (7th Cir. 2003) (recognizing that "[t]he difference between being confined in a jail

15   and being confined to one's home is much greater than the difference between being a member

16   of the general prison population and an inmate of a prison's segregation wing. . . ."). Petitioner

17   had the liberty to "be gainfully employed" and "be with family and friends and to form the other

18   enduring attachments of normal life." *Morrissey*, 408 U.S. at 482.

19           In this case, the Arizona Court of Appeals found that, even assuming the Board had

20   revoked Petitioner's parole, it provided him the due process to which he was entitled.

21   (Respondents' Exh. H) The Court disagrees and finds that the State court's decision is an

22   unreasonable application of *Morrissey*.  The Supreme Court in *Morrissey* held that when a parole

23   revocation hearing takes place, the parolee is entitled to, at a minimum, the following due

24   process rights: (1) written notice of the claimed violation of parole; (2) disclosure of the evidence

25   against the parolee; (3) an opportunity to be heard *in person* and to present witnesses and

26   documentary evidence; (4) the right to confront and cross-examine adverse witnesses (unless the

27   government shows good cause for not producing the witness); (5) a neutral and detached hearing

28   body; and (6) a written statement by the fact-finders as to the evidence relied on and the reasons

1    for revoking parole. *Id.* at 489 (emphasis added).  As stated earlier, the Supreme Court later held

2    that the due process rights articulated in *Morrissey* apply to petitioner's release on conditions

3    equivalent to parole.

4              Here, Respondents do not dispute Petitioner's assertion that he did not receive written

5    notice of the claimed parole violation. Rather, after Petitioner had been returned to ADOC

6    custody, he only received a telephone call from Duane Belcher, advising him that the Board

7    would conduct a hearing on January 15, 2009 to consider his status. (Doc. 1 at 7)  The Arizona

8    Court of Appeals did not specifically discuss whether Petitioner received written notice of the

9    January 15, 2009 hearing. Likewise, there is no evidence that Petitioner received notice of the

10   evidence against him. Petitioner was not physically present at the hearing, and was not permitted

11   to cross-examine witness against him. (Doc. 1, Exh. E, transcript of January 15, 2009 hearing)

12   Petitioner has shown that the Arizona courts' resolution of his due process claim involved an

13   "unreasonable application of" clearly established federal law. Although the Arizona courts

14   applied the Fourteenth Amendment due process standard under *Morrissey*, the State courts'

15   conclusion that he Board afforded Petitioner the process to which he was due when he was

16   returned to ADOC custody is unreasonable. The Arizona Courts did not discuss the specific

17   requirements of *Morrissey*, and ignored that Petitioner did not receive written notice, was not

18   physically present at the hearing, and had no opportunity to cross-examine witnesses against

19   him.  In short, Petitioner did not receive the due process to which he was entitled.

20             Petitioner requests release from custody upon terms and conditions that are the least

21   restrictive. The Court finds, however, that Petitioner's immediate release is not the appropriate

22   remedy. Rather, Respondents must promptly provide Petitioner with a hearing to consider his

23   status that fully complies with *Morrissey.*

24             Accordingly,

25             **IT IS RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus, doc.

26   1, be **GRANTED**. If the assigned District Judge adopts this Report and Recommendation,

27   Respondents must provide Petitioner with a prompt hearing that fully complies with *Morrissey*

28

1  *v. Brewer*, 408 U.S. 471, 486-88 (1972), no later than thirty days of the entry of date the District

2  Judge's order.

3         **IT IS FURTHER RECOMMENDED** that a Certificate of Appealability be

4  **GRANTED** because the issues are "debatable among jurists of reason," or "the questions are

5  adequate to deserve encouragement to proceed further." *Mendez v. Knowles*, 556 F.3d 757,

6  770–71 (9th Cir.2009) (quoting *Barefoot v. Estelle*, 463 U.S. 880 (1983), *superseded on other*

7  *grounds by* 28 U.S.C. § 2253(c)(2)).

8         DATED this 9th day of March, 2012.

9

10

11                            Lawrence O. Anderson
                         United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28